LAW v. WESTERN RY. OF ALABAMA.

(Circuit Court, N. D. Georgia, W. D.   December, 1898.)

1. JURISDICTION OF COURTS — ACTION UPON STATUTE OF ANOTHER STATE — DEATH BY WRONGFUL ACT.

A right of action against a railroad company, to recover damages for the death of an employé, given by a statute of the state in which the injury occurred and the contract of employment was made, may be enforced in another state, in a court having jurisdiction of the subject-matter and of the parties, where it is not contrary to the policy of such state.

2. FOREIGN CORPORATIONS — OPERATING RAILROAD IN ANOTHER STATE — SUBJECTION TO SUIT.

Two Georgia railroad companies acquired, by purchase, a railroad lying entirely in Alabama, with the exception of a few hundred yards, which extended to a terminus and a connection with another road in Georgia. They afterwards organized the defendant company in Alabama, to which they conveyed that part of the road in that state, retaining the title to the small portion in Georgia. The line was, however, operated by defendant as an entirety, and the ownership of the entire line was in fact the same. The road was originally built by a company chartered by both states, and which was, by statute, made subject to suit in Georgia. *Held*, that defendant, being in the actual use and exercise of all the rights and privileges of the original company, was also subject to its burdens, and, among them, to suit in Georgia, and to service of process on its agent therein.

On Plea to Jurisdiction.

Hoke Smith and H. C. Peeples, for plaintiff.

Dorsey, Brewster & Howell and George P. Harrison, for defendant.

NEWMAN, District Judge.   On April 4, 1898, Mrs. Marian M. Law, as executrix of Henry M. Law, deceased, brought suit against the Western Railway of Alabama, in the superior court of Troup county, to recover damages caused by the death of her husband in an accident on said railroad, he being a conductor in the employ of, and his death having been caused by the negligence of, the defendant corporation. On the 27th day of September, 1898, the case was removed by the defendant to the United States circuit court for the Western division of the Northern district of Georgia.   At the time of the removal, a plea to the jurisdiction had been filed, which has been amended in this court, and, as amended, is as follows:

"That the Western Railway of Alabama, defendant in this suit, is an Alabama corporation, with its principal office at the city of Montgomery, in Montgomery county, Ala.   That it owns and operates a railroad from Selma, Ala., to West Point, Ga.   That all of said line of railroad, with exception of a few hundred yards thereof, is situated in the state of Alabama.   That the said few hundred yards which is not in the state of Alabama extends from the Georgia and Alabama state line, near West Point, Ga., to the depot of the Atlanta & West Point Railroad, a Georgia corporation, and there connected with the line of railway belonging to said company in the state of Georgia.   That the defendant corporation, the Western Railway of Alabama, is incorporated under the general laws of the state of Alabama, and is not incorporated under the laws of Georgia or any other state.   That it (the Western Railway of Alabama) was organized on the 15th day of March, 1883, by the Georgia Railroad & Banking Company and the Central Railroad & Banking Company of Georgia, two Georgia corporations, which on the 19th day of April, 1875, purchased all of that part of defendant's railway which is situated in Alabama, to wit, from Selma, Ala., to West Point, Ga., at a

91 F.—52

sale made in pursuance of a decree rendered by the chancery court for the Second district, in the Southern division of Alabama, in a cause pending in said court wherein Josiah Morris and R. J. Lowry, trustees, were complainants, and the Western Railway of Alabama and others were defendants. That, in pursuance of said purchase, Vinson M. Elmore, register in chancery of said court, executed and delivered to the said purchasers a certain deed of conveyance, a copy of which is hereto attached, marked 'Exhibit A,' and made a part of this plea. That on the first Tuesday in October, 1876, the said Georgia Railroad & Banking Company and the Central Railroad & Banking Company of Georgia bought the remainder of its said line of railway, to wit, that portion of a few hundred yards in length which lies in Troup county, in the state of Georgia, and connecting that part of its line lying in Alabama with the Atlanta & West Point Railroad Company, at a sheriff's sale made by virtue of a writ of fieri facias issued from the superior court of Troup county, Ga., in favor of Jesse Boring, against the Montgomery & West Point Railroad Company, and on said date went into possession of the same by virtue of a deed from W. G. S. Martin, sheriff of Troup county, Ga., executed on the 3d day of October, 1876, a copy of which is hereto attached, marked 'Exhibit B,' and made part of this plea. That, prior to the aforesaid purchases, the said Georgia Railroad & Banking Company and the Central Railroad & Banking Company of Georgia obtained an enabling act from the legislature of the state of Georgia, entitled 'An act to authorize and provide for the purchase of the Western Railroad of Alabama and its property and franchises by the Georgia Railroad & Banking Company and the Central Railroad & Banking Company of Georgia, or by either of them, and to authorize said companies to issue bonds in certain cases, and to authorize connecting lines to aid in said purchase, and to issue bonds therefor and for other purposes,' approved February 27, 1875, a copy of which is hereto attached, marked 'Exhibit BB,' and made a part of this plea. That from and after the purchases of said line of railway, as above set forth, the said Georgia Railroad & Banking Company and the Central Railroad & Banking Company of Georgia, as said purchasers, operated said line of railway until the incorporation of the Western Railway of Alabama, as above set forth, when, to wit, on the 28th day of March, 1883, the said two Georgia companies executed to the Western Railway of Alabama a deed of conveyance ·to the entire line of railway extending from Selma, Ala., to and into West Point, Ga., as hereinabove set forth, and including a few hundred yards of the same lying in Troup county, Ga,, as shown by the two copies of deeds executed by the said two companies, hereto attached, marked, respectively, Exhibits 'C—1' and 'C—2,' which are made a part of this plea. That the injury complained of to plaintiff's testator was suffered in Macon county, in the state of Alabama. That, at the time of said injury, plaintiff's testator was a conductor in charge of a train of cars on the defendant's road, which he was operating under a ·contract·of employment with the defendant made in Alabama. That, at the said time and place, defendant was doing business under its said charter in the state of Alabama. That the summons and petition in this cause was never served on the president or any managing agent of the defendant, but upon a joint depot agent of the defendant company and the Atlanta & West Point Railroad Company, who had no charge or control whatsoever, either of the train on which plaintiff's testator was riding, or of the track over which the said train was passing, at the time the said injury occurred; and that from the time of the commencement of this suit, continuously up to and including the present time, the defendant has operated that part of its line lying in the state of Georgia solely under its purchase from the Georgia Railroad & Banking Company, and the Central Railroad & Banking Company of Georgia, as shown by copies of their deeds hereto attached, marked Exhibits 'C—1' and 'C—2,' and under the authority of the act of the Georgia legislature hereinabove referred to, and hereto attached, and marked 'Exhibit BB.' That the plaintiff's right of action, if she has any, does not exist at common law, but is based upon an Alabama statute, which is not similar to the statute of the state of Georgia upon the same subject; and that there now are, and for all the time aforesaid have been, justices in Macon county, Ala., and in Montgomery county, Ala., and that all and singular pleas for the

recovery of damages sustained by employés, based upon the negligence of an employer, within the said county, have been, for all the time aforesaid, and still are, pleaded and pleadable within the said county of Macon, or in the county of Montgomery, in the state of Alabama, before the justices there for the time being, and are not in the superior court of Troup county, Ga., where this action was brought; and this defendant is ready to verify: Wherefore, since the plea aforesaid is brought for the recovery of damages to an employé, based upon the negligence of an employer within the said county of Macon, the said defendant prays the judgment, if the court here will or ought to have further cognizance of the plea aforesaid."

The present hearing is on this plea to the jurisdiction. The first point made is that, the cause of action originating in Alabama, suit cannot be brought in Georgia. It is well established in the federal court that actions such as this, for injuries to the person, are transitory, and need not necessarily be brought in the state where the alleged tort occurred. Dennick v. Railroad Co., 103 U. S. 11. The same question arose in the case of Railroad Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, and the following extract from the opinion will show what was there held:

"Counsel further urged, with much earnestness, that the cause of action founded upon the statute of Louisiana, conferring the right to recover damages for an injury resulting in death, was not enforceable in Texas. The action, being in its nature transitory, might be maintained, if the act complained of constituted a tort at common law; but, as a statutory delict, it is contended that it must be justifiable, not only where the act was done, but where redress is sought. If a tort at common law where suit was brought, it would be presumed that the common law prevailed where the occurrence complained of transpired; but, if the cause of action was created by statute, then the law of the forum and of the wrong must substantially concur in order to render legal redress demandable. In The Antelope, 10 Wheat. 66, 123, Mr. Chief Justice Marshall stated the international rule with customary force, that 'the courts of no country execute the penal laws of another,' but we have held that the rule cannot be invoked as applicable to a statute of this kind, which merely authorizes 'a civil action to recover damages for a civil injury.' Dennick v. Railroad Co., 103 U. S. 11. This was a case instituted in New York to recover damages for injuries received and resulting in death in New Jersey, and it was decided that a right arising under, or a liability imposed by, either the common law or the statute of a state, may, where the action is transitory, be asserted and enforced in any court having jurisdiction of such matters and of the parties. And, notwithstanding some contrariety of decision upon the point, the rule thus stated is generally recognized and applied where the statute of the state in which the cause of action arose is not, in substance, inconsistent with the statutes or public policy of the state in which the right of action is sought to be enforced. The statutes of these two states on this subject are not essentially dissimilar, and it cannot be successfully asserted that the maintenance of jurisdiction is opposed to a settled public policy of the state of Texas."

The circuit court of appeals for this circuit, in the case of Evey v. Railway Co., 26 C. C. A. 407, 81 Fed. 294, had the same question before it, and held that:

"The right of an employé of a railroad company, injured in the republic of Mexico by the negligence of the company, to recover, in a civil action, damages for such injury, under the law of that republic, may be enforced in a federal court of the state of Texas having jurisdiction of the parties and of the subject-matter."

There is no such substantial dissimilarity between the right given by the statutes of Alabama and the statutes of Georgia, in such a case

as this, as will prevent the Georgia court from enforcing the right given by the Alabama statute. The right of recovery by the Alabama law is not only not contrary to the policy of the state of Georgia, but the statute of Georgia goes further than the statute of Alabama; so that the right to bring the suit in Georgia is entirely clear.

The only serious question for consideration is as to whether the defendant company is in Georgia, and in Troup county, in such way as that it is properly found and served. In 1837 the Montgomery & West Point Railroad Company was chartered in Georgia and in Alabama. Its line in Alabama extended from Montgomery to the state line between Georgia and Alabama, and in Georgia a few hundred yards, through the town of West Point, to the depot in West Point. As will be seen from the plea to the jurisdiction now under consideration, in 1875, by an act of the legislature of Georgia, the Central Railroad & Banking Company of Georgia and the Georgia Railroad & Banking Company were authorized to buy, at certain sales which were then impending, as recited in the preamble of the act, all of the Montgomery & West Point Railroad, under a chancery decree in Alabama and an execution issued on a common-law judgment in Georgia, and to hold title to the same under their corporate capacities, or by acquiring and holding stock in the Western Railroad of Alabama, or by holding stock in any new corporation or railroad organized to take the place of the same, under the laws of the state of Georgia or Alabama, or both. The two Georgia companies named did purchase under the chancery decree and sale in Alabama, and also purchased under the sale in Troup county, Ga. In 1883 the Western Railway of Alabama was incorporated in Alabama, and the Georgia Railroad & Banking Company and the Central Railroad & Banking Company of Georgia executed deeds of conveyance to all the property in Alabama to such corporation. There appears to have been no transfer whatever of the part of the railroad lying in Troup county, Ga., since the deed of the sheriff to the Central Railroad & Banking Company of Georgia and the Georgia Railroad & Banking Company, in 1876. The defendant company admits "that it owns and operates a railway from Selma, Ala., to West Point, Ga.; that all of said line of railway, except a few hundred yards thereof, is situated in Alabama; that the said few hundred yards which is not in Alabama extends from the Alabama and Georgia state line, near West Point, Ga., to the depot of the Atlanta & West Point Railroad, a Georgia corporation, and there connects with the line of railway belonging to said company in the state of Georgia." It appears, therefore, that the defendant company is engaged in operating a railroad from the depot in West Point, Ga., a short distance through Georgia, to the state line, and then for a considerable distance through the state of Alabama. So far as its line is in Alabama, and its operations conducted in that state, it is under a charter incorporating it in Alabama; so far as it is in Georgia, it is held by virtue of the act of the legislature of Georgia of 1875, enabling the two Georgia companies named to purchase it. Under the same ownership and control, a line of railroad is being operated from the depot in West Point, through a small part of Georgia, into Alabama. While it is incorporated in Alabama, and is being held, in rather an indefinite

and uncertain way, under the enabling act of 1875, in Georgia, the whole thing is a distinct entity, and, though partly incorporated and partly not, it is the same thing. It is unnecessary to look at the shell, when the declaration and plea, taken together, clearly disclose the substance. It is a continuous line of railway, under one ownership, one control and management, both in Georgia and in Alabama. Apparently, the entire line is now owned by the two Georgia companies, and, while the plea is not explicit on this subject, it raises the presumption that such is the fact.

In the cases of Railroad Co. v. Nix, 68 Ga. 572, Railroad Co. v. Fulghum, 87 Ga. 263, 13 S. E. 649, and Railway Co. v. Dietzen, 101 Ga. 732, 29 S. E. 292, it is clearly held that suits may be brought in Georgia on causes of action originating in other states, where the line of railway extends into Georgia. But it is said that in all of these cases the right to sue was expressly given in the act of the legislature of Georgia authorizing the extension of the railroads into Georgia. This seems to be true, but in the Fulghum Case the law of the case is stated in this way:

"A railroad corporation, whether de facto or de jure, and whether foreign or domestic, is subject to suit in this state in personam, by a citizen thereof, if it owns and operates a railroad in this state which was built by virtue of an act of the legislature authorizing another corporation, chartered by an adjoining state, to build and operate said railroad, and which act declared the corporation, so building and operating, subject to suit by citizens of this state in the county in which the road is located. A corporation, in the actual use and exercise of all the rights and privileges of another corporation, is subject to its burdens, and, among them, to suit for like causes of action for which suits could be maintained against such other corporation, were it in possession of the franchises which have been acquired from it or else usurped."

Now, it is admitted that the part of the Western Railway of Alabama in Georgia was built under a charter granted by the legislature in 1837 to the Montgomery & West Point Railroad Company, which charter provided for suit against the latter company. It would be very strange if the Central Railroad & Banking Company of Georgia and the Georgia Railroad & Banking Company could buy this strip of railroad in Georgia, and obtain all its rights and privileges as to ownership and operation, without assuming its burdens and becoming liable to suit. I do not believe that the enabling act of 1875 ever contemplated such a result. The charter of the Montgomery & West Point Railroad, so granted in 1837, was to continue for 50 years from the completion of the road. Nothing in the record shows when the road was completed. Plaintiff insists that the presumption is that the charter still exists. Whether this is true or not, the result is the same. Where a railroad is taken possession of and is being operated in Georgia, which was constructed on condition that it should be subject to suit, those so taking and operating it certainly assume this burden, and must be subject to suit in like manner as the original corporation would have been. By setting up a peculiar and anomalous condition of control and operation, it cannot free itself from the liabilities imposed by the charter under which the railroad was constructed; certainly not in the absence of some legislative action to the contrary.

Service in this case was made on the depot agent of the Western Railway of Alabama at West Point. He appears to have been the joint depot agent of the Western Railway of Alabama and the Atlanta & West Point Railway Company, which extends from West Point northward. It is not denied that he was the agent of the defendant company in Georgia and in the county where the service was made. In my opinion, the plea to the jurisdiction is insufficient, and should be stricken, and the jurisdiction of the superior court of Troup county, and consequently of this court on removal, sustained.